The Full Commission finds as fact and concludes as matters of law the following as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. On 22 March 1999, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. Zenith was the carrier insuring the risk.
4. Medical records marked as stipulated exhibit 1 were received into evidence.
5. A set of Industrial Commission forms marked as stipulated exhibit 2 was received into evidence.
6. An ambulance call report narrative marked as stipulated exhibit 3 was received into evidence.
7. Additionally, the parties stipulated into evidence the following exhibits:
a. An incident report marked as defendants exhibit;
b. Plaintiffs personnel file was marked as defendants exhibit 2, and;
c. Medical records identified as plaintiffs exhibit 3 at the deposition of Dr. Perry.
***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing on 3 September 1999, plaintiff was a forty-nine year old female who had earned an Associates Degree in Electronics Engineering Technology at Vance-Granville Community College. Plaintiff had been employed by defendant-employer as a test technician and team leader for approximately one year. Defendant-employer had been previously owned by Nortel where she had worked as a test technician and team leader for almost three years. When Nortel was sold to defendant-employer, plaintiff had to reapply for her position. Plaintiff was rehired by defendant-employer on 3 June 1998.
2. Plaintiffs job duties included testing, troubleshooting and repairing the DMS-100 frames, performing visual inspection of the frames to insure that workmanship such as cabling, assembly and wiring were of a high quality, and organizing a rotational plan that enabled technicians to learn to test all frames built in the facility.
3. When there was an employer-employee relationship between plaintiff and Nortel, Nortel did not strictly enforce company rules about tardiness. When plaintiff was rehired by the defendant-employer, her supervisor, Mr. Tony McFalls, warned plaintiff that the new owner expected company rules on tardiness to be strictly enforced. This discussion took place on 12 August 1998 in a departmental communications center meeting.
4. On 27 August 1998, plaintiff received a written warning that her chronic tardiness was unacceptable. Over a seven working day time period, plaintiff had been late for a total of about one hour and thirty-eight minutes, an average of being late by approximately twenty minutes each day. Plaintiff was warned in writing that she could be discharged. Plaintiff signed the copy of this written warning.
5. On 7 October 1998, plaintiff received her third warning about her problem with tardiness. From 27 August 1998 to 7 October 1998, plaintiff had been late six additional times. She had been tardy twenty times since having been employed by defendant-employer. Plaintiff was warned in writing that this third step was part of a four-step process with the last step being termination. Plaintiff signed the copy of this written warning.
6. On 17 March 1999, plaintiff received her yearly performance evaluation. Plaintiffs work performance was evaluated as marginal. Plaintiffs work performance met few standards, needed further development and required that an action plan be developed. The work performance evaluation included ten areas that were reviewed. Plaintiff received a zero rating with regard to adherence to and awareness of company policies and procedures. The evaluation specifically identified the 7 October 1998 corrective action for chronic tardiness as being the partial basis for receiving this low rating. Plaintiff signed this evaluation.
7. On 22 March 1999, plaintiff was tardy in arriving at work for defendant-employer. Mr. McFalls informed plaintiff that she was being terminated for her chronic tardiness. Mr. McFalls directed plaintiff to remove her belongings from her workstation and leave the premises immediately. Plaintiff delayed leaving her workstation as directed by Mr. McFalls. Mr. McFalls contacted a security guard, Mr. Rodney Boone, to assist in escorting plaintiff out of the building.
8. After plaintiff was informed of her termination she warned Mr. McFalls, "what goes around comes around. She threatened to sue Mr. McFalls and the defendant-employer. She alleged that her termination was the result of discrimination.
9. As plaintiff started to walk down the hall leaving her workstation, plaintiff faked an injury by accident by holding her back and screaming. She tucked her leg underneath herself and sat on the floor.
10. Following her simulated injury, an ambulance transported plaintiff to the Granville Medical Center Emergency Room. Plaintiff reported to the EMT that she had fallen over some boxes and had injured her back and neck. The ambulance call narrative report reveals that the EMT observed three boxes stacked three feet away from the plaintiffs left side. This observation contradicted plaintiffs claim that she had fallen over some boxes. At the emergency room plaintiff was prescribed Ibuprofen and Robaxin, but she did not get these prescriptions filled prior to beginning treatment with Dr. Perry.
11. On 24 March 1999, plaintiff began a course of treatment under the direction of Dr. Perry. Plaintiff reported to Dr. Perry that she stumbled over some boxes and injured her neck, upper back, right knee and shoulders. Dr. Perry was unable to detect any objective signs that would corroborate plaintiffs subjective complaints of pain. In his notes he recorded that plaintiff had sustained contusions to her neck, back, ribs shoulders and right knee, however during his deposition he admitted that he did not actually observe any contusions.
12. Plaintiff testified that she was unaware that she was at risk for termination for chronic tardiness when she arrived at work on 22 March 1999. However, the Full Commission does not accept this testimony as credible.
13. Plaintiff testified that she slipped on some unknown object. This testimony contradicts the reports she made to both the EMT and Dr. Perry. Based upon these contradictions and the entire evidence of record, the Full Commission finds that plaintiffs testimony that she fell was not credible.
14. Plaintiff could not have sustained any physical injuries by the method that she reached the floor.
15. Any depression that plaintiff has sustained as a result of her termination is the result of her own inability to perform her job duties as required.
16. No expert medical evidence was presented that plaintiffs job duties placed her at an increased risk of developing a psychological problem with fear of white men.
17. Plaintiffs counsel reasonably believed that she had a good faith basis to pursue this claim on behalf of plaintiff in light of Dr. Perrys records that implied that he had observed objective evidence of contusions on the plaintiffs body two days after she claimed that she had fallen.
18. Plaintiffs appeal to the Full Commission was pursued without reasonable ground.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that she sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 22 March 1999.
2. As plaintiffs appeal to the Full Commission was pursued without reasonable ground, defendants are entitled to an attorneys fee in the amount of $100.00 to be paid by plaintiff. G.S. 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiffs claim for compensation for alleged injuries resulting from the 22 March 1999 termination and alleged fall is HEREBY DENIED.
2. Plaintiff shall pay an attorneys fee to defendants in the amount of $100.00 for her pursuit of this appeal absent reasonable ground pursuant to G.S. 97-88.1
3. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER